All right, welcome to day two of the West panel. All right, we will call the first case for the morning, number 23-20589, United States v. Justin Henry. Good morning, your honors, and may it please the court, my name is Samantha Robertson-Henry in this appeal. We've raised two issues in this appeal. One is a Second Amendment challenge to the validity of Mr. Henry's conviction, and the second is an independent sentencing guideline challenge. We understand that the court has now held that the Second Amendment challenge can't satisfy clear and obvious error under the Plain Error Review, and so that's presently foreclosed for this court. While that might change with the pending cases and litigation, I plan to focus my time today just on the sentencing challenge unless the court has specific questions about the Second Amendment issue. When it comes to calculating an independent sentencing guidelines range, it's well established that the government has the burden of producing evidence to prove the facts that are necessary for the enhancement, and that has to be based on case-specific evidence. The court's not permitted to simply speculate or make assumptions about the necessary facts when they don't have evidence to support them, and when the government fails to meet that burden, the enhancement can't apply. Here, the enhancement that is at issue is a specific enhancement that applies when a defendant possesses a firearm in connection with another felony offense, and there were two key facts that the government had to produce evidence of to support that enhancement in the district court but failed to do so, and in fact urged the court basically to assume their existence. One is whether Mr. Henry actually committed the other felony offense of unlawfully possessing a stolen vehicle. The government had to produce evidence showing that he had knowledge or reason to believe that the vehicle was in fact stolen in order to show that felony offense. And then the second fact was that Mr. Henry possessed the firearm in connection with committing that other felony offense. For both of those instances, the government simply urged the court to assume the existence of those facts without actually producing evidence to support them. Now, the government did object to the PSR denial.  And it did attach an exhibit describing the incident report. Correct. The government's argument... The facts are there, arguably, to draw an inference from them, but is your position that the sentencing judge didn't actually draw the inference? I think both. I would dispute that there was actually factual support to draw that inference. I think it's clear that the sentencing judge didn't do that. The sentencing judge... So those are two different things, right? And I guess what we're looking at is not really so much what the government did, it's what did the sentencing judge do? Right. Andrew Jeffries. Right. Yes, Your Honor. So yeah, to address your first point, the sentencing judge, from the record, it's very clear. Well, first of all, in the objection that the government filed, the government, and both that and at sentencing, the government argued that his mere possession of the stolen vehicle constituted a crime, which was not the case. Then when defense counsel pointed out at sentencing the lack of evidence and lack of even argument that he knew or had reason to believe, that's when the sentencing judge rather than going...  So I guess your legal point is, once probation responded in the addendum that Jeffries does not allow you to stand on a presumption, the government just had to prove a fact, and it never did. Right. And the government had to produce evidence both of the knowledge and of the nexus requirement that Jeffries... Can we be sympathetic to the district judge saying, well, gosh, the language says it's just potential to facilitate, and potential to do something isn't really a provable fact. It's more just a logical conclusion. So I guess the question is, would you agree there's tension between Jeffries and the guideline potential to facilitate possession? I think that to the extent there is any tension, that's clarified by the language and the explanation in Jeffries and by the guideline itself, because the potential for facilitating, that's in commentary that's defining a specific enhancement that says connection. And so the key phrase, and this court said that in Chulot, if that's how you pronounce it, that the key phrase there is a connection between the firearm and the other offense. And then if you look at that application note in the commentary, it says the court has to consider the relationship between the gun and the other felony offense. According to sort of relevant conduct principle. Correct. And let's imagine he'd gone to trial on the 922G. Wouldn't the gun come in as motive evidence? Wouldn't it be a nexus if we're looking at just 404B type nexus? I'm sorry, if he went to trial and it came in as... When the commentary says really to assess the relationship between the gun and the other offense, you should be sort of thinking relevant conduct type connectivity. So I'm wondering, is the appropriate question, if he'd chosen to go to trial just on the gun, wouldn't the stolen vehicle come in as 404B? Oh, this is why he had a gun, because he's driving around a very expensive stolen car. I have not considered it from that perspective. I don't think that it would rise to the level of 404B evidence. I think I haven't... Because that's debatable and your core point is there has to be a finding. Even if that's true, there has to be a finding. There has to be a finding and there has to be case specific evidence that actually provides that. But I'm sort of saying just, I'm saying there may be case specific evidence that exhibit, but then arguably in the best light for you, the government told the judge, you don't really need to make a finding because it's like drug trafficking. Exactly. And that's just legally foreclosed as an avenue under Jeffries. Exactly. And that was the only argument made to the district court judge. And that was basically what the court relied on at the end of the day. We'll see what they say, but let's say, let's say you're right. Why is this a clear error standard review? Why isn't this a procedural error? Have you thought through that? And is it because you don't want to remand? In other words, you could win, but still lose. If it's a procedural error, we remand and there's a resentencing. If it's a factual error, I'm not sure if we do, they don't get a do over. I think the issue here is that the factual finding, because at the end of the day, the court, the defense raised both of these issues and the court implicitly made a factual finding that they were both satisfied. And so my understanding is clear error applies to that. Now, if it's on a legally erroneous. You're not conceding there's an implicit finding, are you? Implicit, the court. Other connection? The court made a finding that the objection was good. And so I think the court's finding is that this enhancement applies. I don't think there was a correct notion of law. If you say there's an implicit finding, then you're right. You're under clear error. And then that's a higher standard for you. We have to say it's not even plausible that he had the gun to protect the stolen infinity instead of just to protect himself because he's always getting in trouble. Right. I guess the important thing is to parse apart what findings we're talking about. There's a finding at the end of the day of the enhancement being applicable. Yes. Underlying that, there's two independent findings that had to be made that the court did not make. And so I guess what I'm saying is an implicit finding is the implicit finding of this enhancement applies, the objection is good. But no, I don't think the court actually engaged in any analysis to make the requisite underlying findings that with respect to knowledge, the court essentially just said, tell me how he couldn't have known and put the burden on the defense to basically disprove. So proximity alone, we don't even ask why gun, only for drug trafficking and burglary to steal a gun? Is that basically how it works? Correct. Yes. Burglary, stealing a gun once you have it in your possession, I believe is the... What about if you just have piles of counterfeit money and you have a gun? Still the court can't say... Still requires a case specific nexus in that situation. And for example, some of the cases at the government sites talking about even in out of circuit cases involving unlawful possessions of a vehicle, there's case specific circumstances that support the nexus finding. For example, there's a case and I believe it is... I apologize, I don't have the case name off hand. There was a case involving a defendant who had stolen a Cadillac from a dealership and the evidence in the record showed that he purchased a gun after stealing the Cadillac and his roommate testified or told police that every time he drove the Cadillac, he brought the gun with him. And so there was some indication, some evidence connecting these two aspects of his conduct. And here we don't have anything like that. We have this brief momentary encounter where he leaves a store middle of the daytime, gets in the car, and as soon as he's approached by police, he abandons the vehicle and runs away with the gun in his possession still. And so there's just nothing from this record that the court could have inferred any kind of connection. And it's unclear if the court understood that and simply just interpreted potential facilitating as this abstract concept that any theoretical speculative possibility that it could have helped the crime. If that's the case, that's obviously a misunderstanding of the definition of connection. If that were permitted to support an enhancement, essentially any firearm case, anytime someone's committing another offense or involved in another offense at the time, it could be considered potential of facilitating because there's a theoretical possibility that the gun could be used to stave off law enforcement to protect activity or any other number of theoretical possibilities. The government abbreviated the factual basis at the rearrangement, but there is a full extended sign, factual basis that does refer to the gun, the car being stolen. The factual basis itself does. I say that because the larger worry in these cases is someone's getting sentenced for something that wasn't charged. They really didn't even know it pops up at sentencing. This isn't that case, right? Your client pled. So I guess, but you wouldn't have thought to maybe withdraw the guilty plea because probation agreed with you. It shouldn't apply, right? So what's, what was the range? What would your client's range be without it? It doesn't matter. I'm sure it's in the brief. It's in the brief probably. What did he get? He got a hundred months, which was, it was a within guideline sentence. Right, but probation recommended getting to a hundred and an upward departure. The district court instead applies the enhancement, right? I don't think it was in an exchange for the district court didn't view it as, oh, I'm giving you this, but I'm taking this back. No, the district court said when he imposed a hundred months, I'm imposing a within guideline sentence. The probation office had put upward departure language and upward variance language in the PSR. The probation office also put downward variance language in the PSR and the court didn't really address it. I think the court was kind of thrown when the defense even filed an objection about upward departure and variance language. So there's no indication that that factored into the court's analysis of the appropriate sentence at all. And just to, I guess, to highlight a couple of things just to address from the brief and the case law from this court that I think is most instructive here. As far as knowledge goes, I think this court's cases in Connor and Sosa are probably the most instructive. In Connor in particular, there was an enhancement that applied. Basically the fraud related to the defendant using credit accounts for commercial entities in order to make fraudulent purchases. But would you agree this is a steeper hill? For knowledge? Yeah. He gets indicted on it. It's dismissed, but he runs from the car. The district judge could infer knowledge right there from the flight. Well, the two cases that are cited in the briefing by the government for flight supporting knowledge actually make clear that that's not enough to infer knowledge of the stolen vehicle. Even when a few months earlier, he's in another stolen Infiniti without a license plate, the district judge still couldn't infer knowledge? Two issues with that. I think one is that that was never discussed, raised, brought up as part of the considerations for the district court. The information, the PSR about that is very sparse. It says basically that he immediately got into a car as the shooting was taking place, and then he eventually goes to the hospital. We don't have any information about who else was in that car, who was driving that car, whose car it belonged to, how he was involved with it. And by, you know, the government's own statements, there were dozens of these cars, these cars that were stolen that were around the city. This was in a neighborhood where, if you look at the PSR, this is the area that Mr. Henry lived in. But he ends up in two of them. I'm sorry? He ends up in two. From that, you can't infer he knows they're stolen, especially if he also runs when he's encountered. To me, it's a much higher climb, but the other issue... I think, and I do think that the nexus issue is the stronger, most glaring problem here. Because even if the court does find knowledge, there's simply no evidence to support any kind of connection between the firearm and the possession of the stolen vehicle. And for that, I would say, obviously, Jeffries and Garza, I think those are the most telling. I think that Sanlin, even though it's a little bit of a different issue, is very instructive there. That's a situation where there's a record that's largely devoid of evidence to support the finding by the court, and the court's just relying on assumptions and speculation. What do you say the quality of the evidence would have to be? The quality of the evidence? I think there would need to be some case-specific connection. So for example... No, no, no. That's not my question. Okay. Because you're arguing that the court can't make the inference. The government says the trial court can choose between competing inferences. That's their issue. You say the judge has to make a finding. I'm not asking you about a case. I'm saying, what, in your view, would the quality of the evidence need to be in order to satisfy the record, as opposed to an inference? Do you understand my question? I believe that... If the court's going to make a finding, we're not even talking about a case. I'm saying if the court's going to make a finding, you say it can't be an inference. The government says the court can choose between competing inferences. That's what was below. You argue they said, well, the court can do that. So in my mind, if you're saying the court has to make a finding, that's an evidentiary finding, not an inference, right? And I'd ask you what's in this case, because I understand your argument he didn't do it, but I'm just asking you, what would the quality of the evidence be or need to be if we said you can't make inference? I think that, and I guess to clarify my position, he can rely on a reasonable inference, but it has to be an inference based on evidence. And so I think he would need to have a piece of evidence to point to. Well, that's what I'm asking you. Right. And so for, I guess, examples... I know that's not this case, but I'm trying to just take your argument, you know, to the end of it. If we say King's X, you can't make an inference because the government says there's competing inferences. Courts make competing inferences all the time, and they say, here, that's sufficient. You're making a statement, nope, judge cannot view the flight and satisfy the element. And I'm just asking, what kind of evidence would there be? Because we're talking about state of mind. Okay. So you're talking about knowledge, not the nexus issue. I think for knowledge, I would say that there would have to be some, I guess I'm not fully understanding if you want specific, like a hypothetical where there was evidence of knowledge. You can think about it when you come back up, but I'm not trying to trick you. Trust me, I'm not trying to trick you. I'm just trying to think through the analysis of where the trial court is in this process. And, you know, we're talking about inferences. So we could either have a bright line to say no inference. You know, if you go there, it's got to be based on an evidentiary finding, which in my mind means somebody testifies to something or this film or something, and then you make the finding. On the other hand, if it's, you have to satisfy, I'm just trying to get in my head, you know, what would we be saying here has to occur or said anyway. So that's the thought question. But again, you can think about it, you're going to come back up. I'm just pretty sure because they argued in the brief, they're going to say the judge could make an inference from competing inferences that were there. And so I'm just sort of pushing that question. So anyway, if you don't have an answer to it, no worries. It's just me ruminating. That's all. Thank you, Your Honor. All right. Thank you, ma'am. All right. Mr. Hubbell. Good morning, judges, and may it please the court. My name is Paul Hubbell, and I represent the United States of America in today's proceedings. Your Honors, this case asked the court to call into question the necessary functions of the district court judges to assess facts at sentencing. The district court did not commit clear error in attributing the in-connection with sentencing enhancement for two reasons. First, there were sufficient inferences combined with admitted facts that Judge Barbier held on to, held the defendant to knowledge that the vehicle was stolen. And second, if there are two permissible views of the evidence, the fact finder cannot be clearly erroneous. And with that, I open up to questions. I agree with you that the law requires an affirmative finding of facts. So when you look at the sentencing transcript, quote me the affirmative finding as to nexus. Judge, in the affirmative finding, is in Judge Barbier's ruling that the enhancement No, just quote in the transcript where is you successfully pursued your objection to the PSR denial of the enhancement. Where is it that the government said, Judge, we need you to make the affirmative finding under Jeffries, which has been cited positively, as I can tell, 400 times? It's not in the transcript. So why isn't that reversible error right there? I mean, our case law after Jeffries is a really clear important decision that's saying if you're going to put someone to jail for four extra levels, there's got to be a finding about nexus, unless two conditions, drug trafficking or and so if you can't say here's the finding, don't you lose? No, Judge. And that's because Judge Barbier's finding was implicit in his finding that the What post Jeffries case allows implicitness? Judge, I'm not aware of a post. That's a problem because you do know the cases. They specifically say affirmative finding. But instead, and this is this is just the government's got to cross its T's and do the work of Rule 32 is the way I look at it, because you didn't put it in the indictment, it being facilitation, then you didn't put it in the factual basis, then probation doesn't find it. Usually in these cases, probation does find it. And the court incorporates the PSR. That's the fact finding. But they said no. So then you object. And the addendum says Watch out for Jeffries. Am I right so far? You're right. OK, then at sentencing, you tell the judge the parallel is firearms or tools of the drug trafficking trade. It's the same thing here with the car. And would you agree that's just wrong legally? It's not the same thing as drug trafficking. That's wrong legally. Yes or no. That is wrong legally judged to be very responsive. No, I appreciate that. But that's that's the problem here. So for me, just me and I'm one of three. My difficulty is both sides are saying to me this is a clear error standard review. But when I read Jeffries, it's a procedural right. You're entitled to a district court to make the finding. And just a couple of questions. Yeah, a couple of questions that trial counsel's parallel that he draws between drug trafficking and the facts of this case, it is not there is no presumption here. We're not arguing that there's a presumption that Judge Barbier should have found. However, the logic behind the drug trafficking cases and that presumption still applies. And the parallel that he made still applies. OK, but let's say that where's what's the limiting principle to that? Because let's say the guy goes and steals some groceries, but he also has his gun. Would you say the same thing? The logic is, well, you know, the logic is there. It's implicit that he was protecting his stolen groceries. Where would we begin to draw the line? Whereas I thought Jeffries was really clear about the line that was drawn. So so my question is, what about the stolen swatch? Ten dollars, the stolen groceries. Would the government be in front of us saying, well, it's implicit that he's protecting those small stolen items, or does it depend on the value of the car? That's exactly right. It's exactly right. It depends on the value. That's where I thought you'd go. But that now we're beginning to say, OK, district judges, if it's twenty thousand dollars stolen and it's implicit. Well, judge, the more value of the stolen or illegally possessed item, the more reason to possess a gun so that someone can't deprive you of that item. It's not like I can see the logic and I agree. I think I see tension with the word potential. But we have Jeffries. And unless I'm misdescribing Jeffries, it's been really useful for sentencing courts. It says there are only two times that you can not worry about purpose. You don't have to make an affirmative finding as to why you had it. But this isn't one of those two. So I'm really looking in this sentencing transcript to see where Judge Barbier, in spite of being advised incorrectly, legally by the government, still somehow himself knew he had to say, I draw the inference. My factual finding is this inference that would be entitled to clear our review. Judge, he does that implicitly on page ninety four of the record of appeal when he holds that the enhancement applies. And to comment a little bit on Jeffries. Well, wait. Just read me what you're quoting on page ninety four. I don't have it right in front of me. I may have misspoken, Judge. No, no, no. You're probably right. I just don't have it. So it's going to be important for me. Well, go ahead. Go ahead and talk about Jeffries. Judge, this case is very dissimilar from Jeffries insofar as Jeffries was a small amount of property, legally possessed items. It was a small cracker. Here, Mr. Henry. Thank you, Kevin. Mr. Henry was in a stolen, very expensive luxury vehicle. There's a much greater need to protect that vehicle. Combine that with the fact that a couple of weeks prior, he was in a almost identical veal and was shot. There's a much higher need to protect that vehicle. And Judge Barbier goes into that with both defense and the government's counsel at the sentencing hearing. No, I understand. I mean, emboldenment is a theory available to you just as protection is under Fifth Circuit law. I think you may have been handed page ninety four. Where does the district court say, and I find that he had this gun to protect that ninety thousand dollar infinity? If I'll read it, Mr. Berman. Your Honor, if I may briefly, in the police report that we attached, it states that Mr. Henry was in another stolen vehicle, brand new SUV, QX80 the week prior and a week and a half. The court, a bunch of these same vehicles were stolen from a rail yard, right? There is about eighty at this point, Your Honor. That's Mr. Henry. Before in December, as it reflects in the PSR, Mr. Henry had been shot multiple times in Downman Road. It was during broad daylight. Two people jumped out of the car. And that's that's exhibit two. That's the incident report. That's correct, Judge. And then the court goes on to say, well, wait a minute. Wait a minute. Wait a minute. What's that have to do with either with whether he knew it was stolen or not, Miss Jocelyn? Because, Your Honor, in terms of whether the gun facilitated the possession of the stolen car, Mr. Henry, although it had not a viable legal defense, was possessing the gun because he was worried about someone might come back that was in protection of himself, not protection of the stolen car. And the court goes on to say, well, it's the guidelines 2K2.1. The comment says that this section provides that it applies if the firearm or ammunition facilitated or had the potential of facilitating another offense. OK. It seems to fit here. And that's what the court says. And that's on page 95 of the record of appeal. He's reading the guidelines correctly. But even though probation had said, watch out for Jeffries, the government doesn't tell him, watch out for Jeffries. No, Judge. And part of that is it's the government's position that Jeffries isn't fully factually on point here, for the reasons that I've previously stated. Yeah, I agree it can be distinguished. I'm just, you've agreed that you miss, I mean, you misadvised the sentencing court on page 92. You told them this is just like drugs, tools of the trade, and that's exactly what Jeffries says you can't do. To be exact there, Judge, on page 92 of the record, trial counsel said that there's a parallel here, and there is a parallel here between We're not saying that a presumption applies, and it's not exactly like drugs, but the logic that we've talked a good bit about here today for the more value of the thing, the more reason to protect that thing with a gun, and that's the primary purpose of a weapon, is solid logic that Mr. Berman applied. If we disagree, do you get a do-over? Judge, I think if you do disagree, the correct decision here would be to remand for another sentencing hearing so that Judge Barbier could. I guess I'm wondering, why does the government get a second chance? Judge, because ultimately this was the court's ruling that it made. Right, but you advised it to make it. What's the post-Jeffries law? Do they all get back to resentencing? Government gets to just find more evidence and offer more? Judge, as far as I can read from the case law that I've looked at in other cases that are similar to this factually, the trial court's decision has been affirmed on appeal. That's because 99% of them, the PSR says yes. Some of them, Judge, some of them haven't, but yes, normally the PSR does agree that the enhancement applies. However... And then the court adopts it, and we've really said that's nice, clean fact-finding. But here, you didn't persuade probation, and you didn't charge it, and you didn't put in the factual basis, and then the government shows up at sentencing, and usually if you're going to get someone sentenced to prison based on something that's not charged, not pled to, and probation's disagreeing, you've got to offer evidence. But Exhibit 2 was never even offered. The district court never actually validates it. Correct? There was no evidence offered by the government. There was no evidence offered by the government at the sentencing hearing. Mr. Berman, the trial counsel, does say we've attached the police... I know, but that doesn't work. You would be objecting so aggressively, because the defendants, they always object to the PSR, and then there's bright-line law saying you've got to then offer the evidence at sentencing. So why would the rule be different for the government? The rule wouldn't necessarily be different for the government or for defense, and that's because the other facts that were contained within the PSR, particularly the pending counts section of the PSR, Regulative Appeal 156, goes into this long narrative of the other stolen car and the background of this case. I know, but if we just look at those facts, then we only have two facts that are admitted by the defendant, gun possession, stolen car possession. Those are the only two facts. There's just the critical what's the nexus finding. Well, Judge, I think you can look towards the nexus within those facts are... Presumption. Well, not presumption, Judge. I thought you were going to say another word. Proximity, presumption. Proximity, the type of gun that he possessed was a handgun. It was easily concealable in his waistband. It had an extended magazine. And furthermore, Judge, Mr. Henry ran when police approached the vehicle, and that was an admitted fact in the PSR. True, but the district court's got to say it's not because he knows he's about to go to jail as a felon possessing a gun, right? As they point out, that's a plausible different narrative. It is a plausible narrative, Judge. However, if there are two permissible views of the evidence, the fact finder cannot be clearly erroneous, and that could be another reason. If it actually makes the other one. In other words, my recollection is my colleagues' questions are what's the quality of evidence? If you go back to resentencing, what's the quality of evidence? When I look at these 2K2.4 enhancements, the gun is actually used or brandished, most of them. So we need a case where the gun is just inertly there, that sort of emboldenment, that doesn't even count for possession anymore, does it? To possess, you have to have active employment, correct? Or the potential, yes, Judge, or for it to be on you. And if you're asking for a case where this court held facilitation United States versus Sexton, that was a 2003 case, it's unpublished, but it's from this court. And in that case, the gun was merely there. Because we have a lot of unpublished cases that seem to be overlooking that. I don't believe it does, Judge. Okay. Do you have any case that has applied Jefferies in that emboldenment type theory? Not particularly with this set of facts. However... These sort of questions, I'm not, I fully respect the word potential is a very difficult word here. So I'm sympathetic, and I'm curious about the remedy. I'm just saying things forcefully, and obviously I don't speak for the panel. The biggest dilemma for me is, what's, do you get a second shot? But not, yeah, unless you have a case that elucidates that. Judge, I don't have a case that particularly on the... Well, and they don't speak to it either. I don't think they've said that you don't get a resentencing, and maybe that is the direction of the Jefferies law. My worry with your position is the limiting principle. You say this is so valuable an inference could be drawn. Factually, I don't see that the judge actually said it, because I think he was misled and thought he could just say it's like drugs. But even if you could draw the inference from high value item, my question is, what guidance do we give sentencing judges when the stolen item is just much lower, where it becomes a really blurry line? You're right, Judge. It would be a case by case basis. Yes. It has to be, and it has to be because there's a number of stolen things that somebody could be in possession of when they're in possession of a firearm illegally. Here, I submit that on the facts, a very expensive $80,000 QX Infinity is a very expensive item. Pivot to the second part of it, because I'm still stuck on why it isn't a remand. My colleague has teased out that, but I didn't hear the other side saying it. I'm still calculating in my head what puts this outside of the arena of a remand within the scope of what the trial court does. That may be wrong, but I put the cork in the bottle on whether you get the inference or not. If you do, you go home, but if you lose on that, then it's what happens after that. I got to look back. I'm just not sure. I know what Jeffrey says, but I just don't know if all that case law goes to this question about it being procedural and whether they're in a remand. I don't think Jeffrey's . . . I just say devote some time to that. Assume, without deciding, the front end of this issue, that it's not a straight up affirm. Counselor officer will have to address it. Yes. Why isn't it, as Judge Higginson said, is it procedural, and you get to do it over, or you don't get to . . . we can make errors, but we get to cure the errors? Judge, it's not procedural because it's a factual finding that the court has to make. At sentencing, it's my argument that they did, although they didn't . . . In that, it seems like you're stuck. It didn't happen. You could have . . . I don't mean you personally, but the government could have done it. PSR, object. It's an error. Done deal. Enhancements out the door. End of discussion. They certainly could have put on more evidence at the trial court. That's fair. However, we are to accept that in the PSR, those are admitted facts. In the factual basis, they were admitted facts. That's enough for Judge Barbier. There wasn't much disagreement to the facts of this case. This sentencing hearing boiled down to argument between the two parties. There wasn't a disagreement of whether Mr. Henry ran away, or whether he wasn't in possession of a gun, or whether that car was stolen. All those things were admitted in the factual basis and in the PSR. Judge Barbier, he assessed those facts and made a decision. That's what happened. What's the sentence without the enhancement? It was in between 57 and 72 months, and then . . . 100 months, right? You get 100 months. Judge Barbier gave him a four-level enhancement, 84 to 105, and he gave him 100 months. If the enhancement's knocked out, he's back down between 50 and 70, or 50 and whatever it is, or at least that's the range. That's right, Judge. That would be his sentencing guideline range. Why wouldn't we just vacate and remand with instructions to the district court to resentence the defendant without the enhancement? You certainly could. Trial judges don't like to be reversed, but they sure like for us to tell them what to do, if we are. They don't really like to be guessing at it. I mean, I'm just thinking out loud, but they say, if you're going to do it, tell us what to do. I'm just saying, would there be something wrong? Well, I understand your position on the front end, but I'm saying, assuming you don't persuade the panel, at least, or majority, wouldn't it be cleaner? We'd tell the judge, vacate, remand, resentence without enhancements. The guy gets the sentence, and you all move on to the next case. The court could certainly do that. All right. I just want to be clear. Then we don't have to ruminate about the contours of Jeffers, and when you get to make an inference, and all of that sort of stuff, none of which is really briefed out as such, but anyway, just ask. The court could certainly do that, and if I could briefly conclude . . .  Judge Barbier had sufficient inferences, combined with admitted facts, including the defendant was in a nearly identical vehicle the week prior. That vehicle was also stolen from a very short proximity to the rail yard where the crime scene admitted, and for those reasons, we ask that you affirm the trial court. All right. We appreciate it. Thank you much. All right. Back to you, Ms. Nicol. Yes, Your Honor. I guess I want to kind of cleanly parse out the two different issues we have here, the knowledge issue and then the nexus issue. Starting with the knowledge issue, to address Judge Stewart, your question, toward the end of my previous argument about what kind of information could support inference, I think in this case, defense counsel below actually pointed out during the sentencing hearing, oftentimes you'll see that an ignition has popped out in a car, or there's some kind of significant feature of the vehicle that would put somebody on notice that they are driving a stolen vehicle. Here, we don't have any circumstances like that, so I think that's the kind of evidentiary support for a reasonable inference that's lacking here. Another example would be, and this is from this court's decision in Olivas. There, there was corroborating information from a confidential informant who actually told law enforcement that the defendant had told him that the guns were stolen. He was trying to sell them. The car he was in the first time didn't have a license plate. The car that they said he was inside the week prior didn't have a license plate. Again, there's no information about, first of all, that he was the driver, that he possessed that car. There's only an allegation in a police report that he briefly entered that car while he was being shot. There's no information about the circumstances of that, whose car that was, what information he had, what connection he had. I don't think that would rise to the level of showing knowledge that that car was even stolen, but much less knowledge of this vehicle that he actually occupied. And then, I think Diaz-Carrion is an informative case here. It's not the same context, but there, it deals with hidden compartments in vehicles for drugs and whether a driver can be presumed to have knowledge of drugs in a hidden compartment in the car he's actually driving. And the court has held that that's not enough. If it's something that is not readily apparent to the driver, you can't just assume that he must have knowledge of drugs in a compartment in a car he's driving. On the hard, I'm sure you're getting to it, the hard nexus issue. That's right. If you both tell us the standard review here is clear error, does that mean you're admitting, you're agreeing there was an implicit finding, you're just saying it's definitively wrong, or are you also asserting a procedural right, that there never was a finding, the court was told by the government, don't make the finding? There's certainly a procedural component to it, Your Honor. That we would review de novo, right? If the court forgot to make the finding, Jeffrey says, then I think, correct me if I'm wrong, legal error, we remand, resentencing, I don't see in your brief. You've argued against resentencing. I've argued for resentencing without, yes, with the reversed enhancement, without the opportunity to re-urge. Did you say that in the brief, without the opportunity to re-urge? I don't think I used those words. I think I said reverse the enhancement. I can't recall specifically. So I would think it would be, you know, get it back, he made a procedural error, he gets to make the finding, so you prevail in your argument, but a lot of the post-Jeffrey's case law does seem to send it back just for resentencing. Do you have any post-Jeffrey's case where the court of appeals has said there was a Jeffrey's error and you can't revisit it? I don't have any cases that specifically say that. And are you even arguing for that? My position is that there should not be a second via the appellate. I think the government, first of all, this is, I think, akin to an invited error. The government supplied erroneous legal reasoning to the judge, that the judge seemed to just accept. I don't think there's any basis. It sounds like the government does not even have additional evidence or argument. It sounds like they believe that they... They never offered Exhibit 2. Correct. At sentencing, they never introduced that. That's not in evidence. Correct. Correct. So, yeah, I don't think there's any basis. I think the government has indicated that there is no additional evidence or argument they would make. I think their position is that the information that was presented at sentencing was sufficient, which... There was no evidence presented. Right. Right. Aside from the factual basis. And then, so, kind of just to go back to the nexus issue, I just wanted to address a couple points from the government's argument. They've argued about this value of the car issue and saying that that supports or provides the evidence that is necessary. There's several problems with that. I think, one, obviously, this was not something that was discussed, raised, addressed below in the first place. But also, Garza, when this court applied Jeffries and Garza, the government tried to make a similar argument with respect to quantity of drugs. It was a drug possession case and said, look, there's a significantly larger number of drugs here, so that supports the finding that the gun would be used to protect them as opposed to the smaller amount in Jeffries. And this court rejected that reasoning and didn't find that to be persuasive. I also think that would create... I'm sorry. The counsel opposite about, you know, vacating and tell the judge what to do. But on the other hand, the string of cases from Jeffries is a vacating and resentencing. So, somewhat like I asked him, I mean, you aren't arguing. I mean, you're saying that they don't get a do-over, but Jeffries was a vacating and resentencing. Most of the cases are resentencing, so what would prohibit . . . you know, assuming you prevail on the issue you're raising, what case would prohibit the panel from just simply vacating for resentencing as opposed to vacate and remand, you know, sentence the defendant to X? And as I said, I don't have a specific case that prohibits this court. I think that is an option available to the court. My position would just be that the government had full opportunity in the first incident. Yeah, I'm not asking you to waive the argument that you're making. I'm just saying we've talked about Jeffries and it's different, it's the same, whatever, but I'll look some more. But my recollection, most of those cases were resentencings. Yes. You know, unless it was some kind of defective issue. But I get your point about invited error and so on and so forth. So, it's an interesting case. That's why we set it for argument because it's not, you know, clear cut. So, we appreciate the briefing and argument on both sides, but particularly responding to the questions that the court has. So, we will deem the case submitted and we'll get it decided as soon as we can. Thank you, Your Honor. Thank you. Thank you to both sides.